**CHARLIE'S DREAM, INC., Plaintiff,**

v.

**CITY OF PHILADELPHIA,
et al., Defendants.**

**Civil Action No. 96–4278.**

United States District Court,
E.D. Pennsylvania.

Dec. 17, 1998.

866

James V. Mathieu, Philadelphia, PA, Joseph A. Diorio, Philadelphia, PA, for Plaintiff.

Jeffrey M. Scott, Edward D. Chew, Jr., City of Philadelphia Law Dept., Philadelphia, PA, for Defendant.

### *MEMORANDUM*

LOWELL A. REED, Jr., District Judge.

Before the Court is the motion of plaintiff Charlie's Dream for partial summary judgment on the issue of liability as to the claims in Counts I, II, III, V, VI, VIII, IX, X, XI, and XII of the amended complaint[1] against defendants City of Philadelphia, City of Philadelphia Police Department, City of Philadelphia Department of Licenses and Inspections ("L & I"), Richard Neal, police commissioner, J. Ferry, police officer, Gilbert Velez, police officer, Donald Paxton, police officer, Edward Amous, police officer, Leonard Sutton, police officer, B. Chest, police officer, and Joseph Lanciani, sergeant. Because I find that Charlie's Dream has not established the absence of any genuine issues of material fact nor that it is entitled to judgment as a matter of law, the motion will be denied.

## I. BACKGROUND

The following facts are gleaned from the record and taken in the light most favorable to the defendants, as the nonmoving parties. Without accepting them as true for the purposes of this motion, I have cited paragraphs of the amended complaint only to develop the background necessary for understanding the nature of the claims of Charlie's Dream. Immaterial facts and factual averments not

1. Charlie's Dream filed a complaint in this Court on June 10, 1996, alleging various claims under federal and state law. On March 2, 1998, Charlie's Dream filed a motion to amend the complaint. As the defendants do not oppose the amendment and leave to amend should be freely given when justice so requires, the motion to amend the complaint will be granted and the amended complaint attached to the motion will be deemed filed. For the purpose of this motion, I will assume that the defendants have denied any allegations in the amended complaint which are new and were not a part of the original complaint.

properly supported by the record· are omitted.

Charlie's Dream is an adult bookstore and adult peep show movie facility, which sells adult videos and films, sexual devices and paraphernalia, and operates a live sexual fantasy conversation booth ("fantasy booth"). (Amended Complaint ¶ 10). A customer of the fantasy booth may have an interaction with a hostess, each of whom is an independent contractor, either via closed circuit telephone with a plexiglass shield between the customer and the hostess for $2.00 per minute, or face-to-face, in which the hostess and the customer sit on the same side of the fantasy booth for $2.00 per thirty seconds. (Amended Complaint ¶¶ 14–15). Charlie's Dream alleges that activities in the booth are monitored via closed circuit television by one of its employees in order to protect the hostesses and to ensure that no applicable laws are violated during the face-to-face sessions. (Amended Complaint ¶¶ 15–16).

On March 1, 1996, defendant officers Ferry, Chest, Velez, Amous, and Paxton investigated the premises of Charlie's Dream regarding alleged prostitution activities. (Amended Complaint ¶ 19). Two of the officers were allegedly solicited by fantasy booth hostesses to engage in sex for money (Amended Complaint ¶¶ 20–21). Employees of Charlie's Dream were subsequently arrested, and pursuant to a search and seizure warrant, the officers searched the premises and seized several items. (Amended Complaint ¶¶ 23–26; Pl.'s Ex. R).

On March 8, 1996, L & I served a cease operations order on Charlie's Dream and revoked its business privilege license, which is required to legally conduct business in Philadelphia County. (Amended Complaint ¶ 30; Robert Pili dep. at 7; Pl.'s Ex. E). These actions by L & I were taken pursuant to an established municipal policy under which the police department sends notice to L & I that prostitution activity is ongoing at a business and requests that L & I revoke the business privilege license of that establishment, a request which is always honored by L & I. (Amended Complaint ¶ 31; Gerald L. Richards dep. at 13; Edward McLaughlin dep. at 18; Pl.'s Exs. A and G). L & I had the authority in 1996 to revoke the business privilege license of any business it had reason to believe was conducting a prostitution enterprise on its premises. (Ed McLaughlin dep. at 30). Charlie's Dream did. not receive notice of these actions or a predeprivation hearing. (Amended Complaint ¶ 32).

Apparently, Charlie's Dream filed suit against at least some of the defendants in state court after its license was revoked. On March 14, 1996, Judge Pamela Pryor Cohen of the Philadelphia Court of Common Pleas issued an order permitting Charlie's Dream to resume business upon the condition that it not solicit, engage in, or promote prostitution on its premises. The order indicated that L & I retained the right "to petition the Court with notice given to the non-moving party for a hearing" in the event that future investigations revealed noncompliance with the order or the law. (Pl.'s Ex. F).

Two police officers returned to Charlie's Dream on May 7, 1996 and May 10, 1996 for a follow-up investigation. (Amended Complaint ¶¶ 37–39). On May 10, 1996, Officer Sutton was allegedly solicited to engage in sex for money by one of the fantasy both hostesses. (Amended Complaint ¶ 40). As a result, employees of Charlie's Dream were arrested, and pursuant to a search and seizure warrant, the police seized several items from the premises. (Amended Complaint ¶¶ 41–43). None of the items seized on March 1, 1996 or on May 10, 1996 was used to prosecute the employees who were arrested, nor was Charlie's Dream charged with a criminal offense as a result of these occurrences.

The police department faxed a report of the arrests on May 10, 1996 to L & I; L & I served a second cease operations order and revoked Charlie's Dream's business privilege license. (Amended Complaint ¶¶ 47–48; Pl.'s Ex. E). Charlie's Dream alleges that this violated the order of the Court of Common Pleas, and thus, the officers knew or had reason to know that their actions were illegal. (Amended Complaint ¶ 50). Charlie's Dream did not receive notice of these actions of L & I or a predeprivation hearing. (Amended Complaint ¶ 48). The business

was shut down from May 15, 1996 to May 22, 1996.

The amended complaint alleges multiple claims under 42 U.S.C. § 1983. In Count I, Charlie's Dream alleges a claim under § 1983 against all defendants for violation of its substantive due process rights under the Fourteenth Amendment in the illegal search and seizure of its property and for deprivation of its property interests. In Count II, Charlie's Dream alleges a claim under § 1983 against all defendants for violation of its rights under the Fourth Amendment in the illegal search and seizure of its property. Count III alleges a claim under § 1983 for violation of its rights to procedural due process under the Fourteenth Amendment in the illegal search and seizure of its property and deprivation of its property without notice or opportunity to be heard. Charlie's Dream alleges a claim in Count V under § 1983 against all defendants for violation of its First Amendment rights in that the interference with its substantive liberty interest through the illegal search and seizure deprived it of protected freedom of expression. In Count VI, Charlie's Dream alleges a claim under § 1983 against all defendants for violations of its rights to procedural due process and under the First Amendment in that it was denied freedom of expression without notice or opportunity to be heard. Charlie's Dream alleges a claim under § 1983 against all defendants for violation of its substantive due process rights under the Fourteenth Amendment for failing to give it notice and a predeprivation opportunity to be heard in Count VIII. In Count IX, Charlie's Dream alleges a claim under § 1983 against all defendants for violation of its procedural due process rights for depriving it of its property without notice and opportunity to be heard. Charlie's Dream alleges a claim in Count X under § 1983 against the City of Philadelphia and Officer Neal for using the warrant procedure, the cease operations orders, and the license revocations to illegally seize its property. In Count XI, Charlie's Dream alleges a claim under § 1983 against all defendants for

maintaining a cease operations and license revocation policy that does not comport with due process. Finally, Charlie's Dream alleged a claim under § 1983 against all defendants for conspiring to shut down its business operations and violate its constitutional rights in Count XII.[2]

Although somewhat redundant and convoluted, when boiled to their essence, the counts of the amended complaint on which Charlie's Dream is seeking summary judgment allege claims for violation of procedural due process, substantive due process, and violation of its rights under the First and the Fourth Amendments.

## II. STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" then a motion for summary judgment may be granted.

The moving party has the initial burden of illustrating for the court the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has made a proper motion for summary judgment, the burden switches to the nonmoving party. Under Rule 56(e),

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

**2.** Charlie's Dream also alleges a claim for violation of substantive due process under the Pennsylvania constitution in Count IV and a claim against all defendants for violation of Article 1,

Section 1 of the Pennsylvania constitution in Count VII. It is not seeking summary judgment on those counts of the amended complaint.

appropriate, shall be entered against the adverse party.

The court is to take all of the evidence of the nonmoving party as true and to draw all reasonable inferences in his favor in determining if there is a genuine issue of material fact. *See Adickes,* 398 U.S. at 158–59, 90 S.Ct. 1598. In order to establish that an issue is genuine, the nonmoving party must proffer evidence such that a reasonable jury could return a verdict in his favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A proper motion for summary judgment will not be defeated by merely colorable or insignificantly probative evidence. *See id.* at 249–50, 106 S.Ct. 2505.

## III. ANALYSIS

■ To establish a prima facie case under § 1983, a plaintiff must show that the alleged action occurred under color of state law and that the action is a deprivation of a constitutional or federal statutory right. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). I will address the four bases of constitutional deprivation on which Charlie's Dream is seeking summary judgment in turn.

### A. Violation of Procedural Due Process

■ Charlie's Dream argues that the defendants violated its Fourteenth Amendment right to procedural due process in shutting down the bookstore and movie theater portions of its business and revoking its business privilege license, which is a property right, without a predeprivation hearing. However, not all deprivations of property without a predeprivation hearing violate due process, if a prompt postdeprivation hearing is provided. *See, e.g., id.* at 543, 101 S.Ct. 1908; *Hudson v. Palmer,* 468 U.S. 517, 531–33, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

To determine whether a predeprivation hearing is required to comport with due process, a court must balance the factors set forth in *Mathews v. Eldridge,* which are "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used," "the probable value, if any, of additional or substitute procedural safeguards,"and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).[3]

The defendants argue in their memorandum that while a hearing preceded neither revocation of the plaintiff's business privilege license, a hearing was held after each revocation within ten days. However, the defendants submitted no evidence to this Court that such hearings actually took place, such as evidence of where and when the hearings were held, evidence of who conducted the hearings, or transcripts of the hearings. Charlie's Dream indicates that its business was shut down for only one week in March of 1996 and one week in May of 1996. Charlie's Dream does not argue or produce evidence that postdeprivation hearings were not held, only that it did not receive predeprivation hearings.

■ I find that there is a genuine issue of material fact as to whether postdeprivation hearings actually took place within ten days of the license revocations. In addition, Charlie's Dream did not submit evidence sufficient to show that there are no genuine issues of material fact as to the factors which must be balanced under *Mathews,* such as evidence of the risk of erroneous deprivations under the current procedures or the probable value of additional procedural safeguards, nor did Charlie's Dream establish that the balance of factors weighs in its favor as a matter of law.

---

**3.** Charlie's Dream argues that the decision in *City of Philadelphia, Board of License & Inspection Review v. 2600 Lewis, Inc.,* 661 A.2d 20 (Pa.Cmwlth.1995) is dispositive of its claim of violation of procedural due process. The Commonwealth Court held that to comport with the requirements of due process, L & I must provide a licensee with notice of pending revocation and

opportunity to be heard on revocation, unless an overriding public interest exists to justify revocation of a license prior to providing a licensee with a hearing, in which case a prompt postdeprivation hearing must be provided. *Id.* at 22. This case is not inconsistent with the balancing test provided in *Mathews,* which is binding on this Court.

Thus, I conclude that Charlie's Dream is not entitled to summary judgment on its claims for violation of procedural due process.

### B. Violation of the First Amendment

Charlie's Dream argues that the defendants violated its First Amendment rights because the closing of its bookstore and movie theater and seizure of its newspapers constituted a prior restraint on its freedom of expression and the defendants did not employ the least restrictive means. Charlie's Dream argues that the evidence seized from the two raids has not been used to prosecute Charlie's Dream or used in the prosecution of the individuals who were arrested during the raids. Thus, Charlie's Dream argues, this is evidence that the shutting down of its business and the seizure of newspapers was really an effort to remove what the defendants considered to be obscene materials from the public. Charlie's Dream offered no evidence to this Court of what type of newspapers were seized nor evidence of whether all copies of some types of newspapers were seized. The defendant argues that the newspapers seized from Charlie's Dream were taken as evidence that Charlie's Dream operated a prostitution enterprise. Apparently, newspapers such as those seized at Charlie's Dream contain advertisements for such establishments which explicitly describe what is offered at the establishments. (Sergeant Joseph Lanciana dep. at 24–26).

I find that genuine issues of material fact exist at least as to the number and type of newspapers that were seized from Charlie's Dream, as to whether the motivation of the officers in seizing these papers was to prevent Charlie's Dream from distributing such papers or to gather evidence of prostitution, and as to the motivation of the agents of L & I in revoking the business privilege license of Charlie's Dream. Thus, Charlie's Dream is not entitled to summary judgment on its claims under the First Amendment.

### C. Violation of the Fourth Amendment

Charlie's Dream seeks summary judgment in its favor on its claim that the defendants violated its Fourth Amendment rights in Count II of the amended complaint.

Charlie's Dream alleges that the affidavit used by the police to obtain the search warrant was overbroad, excessive, and described personal property items not within the scope of the search, that none of the items seized has been used to prosecute Charlie's Dream for any crime, and that the purpose of the defendants was to interfere with Charlie's Dream's business operations without cause and without notice and an opportunity to be heard. However, Charlie's Dream did not argue its claim under the Fourth Amendment specifically in its memorandum in support of summary judgment, nor did it submit evidence relevant to this claim other than the mere allegations in its amended complaint that the warrant and supporting affidavit were legally defective. No party submitted to this Court a copy of the warrant or the affidavit in support of the application for the warrant. I find that genuine issues of material fact exist at least as to the facts forming the basis of the officers' affidavit supporting the application for the warrant and as to the scope of the warrant. Thus, Charlie's Dream is not entitled to summary judgment on its claim under the Fourth Amendment.

### D. Substantive Due Process

Although seeking summary judgment on Counts I and VIII of the amended complaint, Charlie's Dream presents no evidence or legal argument to support its claims for violation of substantive due process in its motion or memorandum. Thus, I find that Charlie's dream has not established the absence of any genuine issues of material fact on these claims, and I conclude that it is not entitled to summary judgment on those counts of the amended complaint.

### E. Qualified Immunity Defense

The individual defendants argue that there is a genuine issue of material fact as to whether their conduct was reasonable as a matter of law in light of clearly established law at the time of the incident entitling them to qualified immunity on the claims of Charlie's Dream. The defendants argue that the deposition testimony of the individual defendants reveals that the arrests, seizure of property, and revocation of plaintiff's license

followed an investigation of prostitution, and as such the arrests were based on probable case and the revocation of the license was just. The defendants do not, however, submit transcripts of the deposition testimony of these individual defendants to the Court. Because I find that genuine issues of material fact remain on all of the claims on which Charlie's Dream is seeking summary judgment, that Charlie's Dream does not argue that the individual defendants are not entitled to qualified immunity on those claims as a matter of law, and that there are questions of fact regarding the individual defendants' conduct during the seizure of evidence from Charlie's Dream and the revocation of its license, the plaintiff is not entitled to summary judgment on its claims against the individual defendants.

## IV. CONCLUSION

The motion and accompanying memorandum of Charlie's Dream are filled with conclusory statements, which are not sufficient to establish the absence of a genuine issue of material fact or entitlement to judgment as a matter of law. Charlie's Dream has the burden of proving its case; it cannot switch the burden of proof to the defendants through the vehicle of a motion for summary judgment. In order for Charlie's Dream, as the plaintiff, to receive summary judgment, it must show not only that there are no genuine issues of material fact, but that it also is entitled to judgment as a matter of law in its favor. Charlie's Dream has done neither in its motion for summary judgment. Similarly, the defendants did not submit evidence to the Court to support its defenses to the claims of Charlie's Dream or defend against the motion for summary judgment. To the extent that any portions of the claims of Charlie's Dream may ultimately be decided as a matter of law, I am unable to do so on the sparse factual record presently before the Court. Accordingly, the motion for summary judgment will be denied.

An appropriate Order follows.

## ORDER

**AND NOW,** this 17th day of December, 1998, upon consideration of the motion of plaintiff Charlie's Dream, Inc. to amend the complaint (Document No. 26), there being no objection thereto by the defendants (Document No. 28), and the motion of plaintiff for partial summary judgment as to liability (Document No. 33), the response of the defendants thereto (Document No. 36), as well as the depositions, exhibits and other evidence of record, having found that genuine issues of material fact remain and that plaintiff is not entitled to judgment as a matter of law, and for the reasons given in the foregoing memorandum, it is hereby **ORDERED** that the motion to amend the complaint is **GRANTED** and the amended complaint attached to the motion to amend is **DEEMED FILED** and the motion for partial summary judgment is **DENIED.** This case shall proceed to trial on all of the claims of plaintiff.

**IT IS FURTHER ORDERED** that the defendants shall file an answer or otherwise respond to the amended complaint no later than **January 4, 1999.**

**IT IS FURTHER ORDERED** that the parties shall submit a joint report to the Court no later than **January 18, 1999** as to the status of settlement. If the parties need the assistance of the Court in facilitating settlement negotiations, the report should so indicate. By said date, plaintiff shall contact the Deputy Clerk to arrange a date for a final scheduling conference.